UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JONATHAN MICHAEL BURTON,

      Plaintiff,

v.                                      Case No. 3:21-cv-597-BJD-MCR

GONZALO A. ESPINO, M.D.,

      Defendant.
_____

## ORDER

### I. Status

Plaintiff, Jonathan Michael Burton, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action by filing a *pro se* complaint under 42 U.S.C. § 1983. Doc. 1. He is proceeding on a Second Amended Complaint (Doc. 22). Plaintiff sues one Defendant – Gonzalo A. Espino, M.D. *Id.* at 2. He alleges Defendant acted deliberately indifferent to his serious medical needs following a use of force. *See generally id.*

Before the Court is Defendant's Motion to Dismiss (Doc. 50; Motion). The Court advised Plaintiff that granting a motion to dismiss would be an adjudication of the claim that could foreclose any subsequent litigation and provided Plaintiff with an opportunity to respond. *See* Order (Doc. 12). Plaintiff

filed two responses opposing the Motion (Docs. 60, 62). Thus, the Motion is ripe for the Court's review.

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III. Plaintiff's Allegations

Plaintiff alleges that on April 21, 2020, while housed at Florida State Prison, officers engaged in two uses of excessive force resulting in severe injuries. Doc. 22 at 13. According to Plaintiff, the first use of force occurred while Officers Mitchell and Smith were escorting him back to his cell after a mental health meeting. *Id.* He asserts Smith used his radio to hit Plaintiff in the head, causing a large laceration, and Mitchell "snapp[ed]" Plaintiff's left ring finger while punching and kicking him. *Id.* Medical evaluated Plaintiff

following the first use of force and used Dermabond to close Plaintiff's headwound. *Id.* at 13-14.

Plaintiff contends that after the exam, while officers escorted him back to his cell, he advised the officers that his head hurt, he suffers from epilepsy, and he was experiencing "unbearable pain" in his knee, hand, and ribs. *Id.* Plaintiff alleges he then refused to enter his cell and declared a medical emergency. *Id.* According to Plaintiff, in response to his declaration, four officers began physically beating him. *Id.* at 13-14. He asserts the use of force caused his headwound to reopen and begin "bleeding badly" and he sustained new injuries. *Id.* at 14. Plaintiff states Nurse Waite then "refused to see" his new injuries. *Id.* According to Plaintiff, once he was placed in his cell and officials left, he suffered two seizures. *Id.*

Plaintiff asserts that Defendant Espino evaluated him for the first time on April 23, 2020. *Id.* Plaintiff maintains that as soon as he entered Defendant Espino's exam room, Defendant Espino stated, "I got your grievances!" before yelling, "He's done!" and demanding officers escort Plaintiff out of the office. *Id.* Plaintiff argues he then asked Defendant Espino to examine his headwound, told him about his two seizures, and explained he was experiencing pain and swelling in his fingers, ribs, and knee. *Id.* Defendant Espino replied, "Think about that next time you write a grievance[,] [g]et out of here!" *Id.* According to Plaintiff, he later learned that after that encounter,

3

Defendant Espino ordered x-rays for Plaintiff's chest, left hand, left knee, and left ribs. Doc. 22 at 14; Doc. 22-1 at 4-5. The x-rays were conducted on April 27, 2023, and showed Plaintiff's left hand, knee, and ribs appeared normal with no fractures or dislocation, and his chest appeared normal. *Id.*

Plaintiff asserts that in the months that followed, his head and hand injuries got significantly worse and he continuously filed sick-call requests and grievances requesting medical care for those injuries. Doc. 22 at 14. He contends that in response to those sick-call requests, another doctor ordered x-rays for both Plaintiff's hands. Doc. 22 at 14. According to Plaintiff, the second set of x-rays, conducted on July 27, 2020, showed a "new ring finger [proximal interphalangeal (PIP)] joint flexion deformity" on his left hand, as well as "index and long fingers PIP joints" flexion on his right hand. *Id.*; Doc. 22-1 at 6. He contends Defendant Espino's failure to provide adequate medical care caused his injuries to worsen, as the July 2020 x-ray results show. Doc. 22 at 14.

Plaintiff contends that two months after the July x-ray, in September, Nurse K. Cribb falsified medical documents "to cover up [Defendant] Espino['s] failure to treat [ ] Plaintiff's serious medical need" by erroneously documenting that Plaintiff's pain does not radiate despite Plaintiff's continuous complaints that his pain "was extreme and [ ] runs up [his] arm." *Id.* at 14-15. He also alleges Sergeant Harper and Nurse Waite helped cover up Defendant Espino's

4

actions by refusing to take Plaintiff to his follow-up exam and instead erroneously documenting that Plaintiff refused to attend his call-out.[1] *Id.* at 15. According to Plaintiff, in September 2020, soon after he was diagnosed with "deformity/PIP joint flexion," officials sent him to Reception and Medical Center for an orthopedic consult. *Id.* The orthopedic specialist diagnosed Plaintiff with Boutonnières deformity on his right index finger and left ring finger; noted a forty-five-degree flexion contraction on Plaintiff's left ring PIP joint and right index PIP joint; and documented a reduced range of motion. Doc. 22-1 at 9 The orthopedic specialist recommended Plaintiff undergo physical therapy to regain range of motion in both hands. *Id.* Plaintiff asserts the documented hand injuries were so obvious that even a lay person would be on notice of Plaintiff's need for medical care. *Id.*

Plaintiff states that Defendant Espino denied the orthopedic doctor's physical therapy recommendation. Doc. 22 at 15. Plaintiff attaches to his Second Amended Complaint his November 3, 2020, medical record, in which Defendant Espino documented the orthopedic specialist's physical therapy recommendation and noted, "not approved condition." Doc. 22-1 at 12. According to Plaintiff, when he denied Plaintiff physical therapy, Defendant Espino stated, "I told you about writing those grievances on me[,] get out of my

---

[1] Plaintiff alleges Defendant Espino was not at work during a portion of the relevant timeframe. *See* Doc. 22 at 15.

office." Doc. 22 at 15. Plaintiff argues Defendant Espino has continuously denied Plaintiff's requests for medical care to treat his head and hand injuries, violating his rights under the Eighth and Fourteenth Amendments. *Id.* at 16.

As to his head injury, Plaintiff alleges his hereditary epilepsy is a serious medical need that became worse following the April 21, 2020, uses of force; Defendant Espino knows about Plaintiff's epilepsy diagnosis and knew about Plaintiff's head injury; Defendant Espino never treated Plaintiff's head injury; and Defendant Espino's failure to provide medical care caused Plaintiff to suffer two seizures, reoccurring bleeding, long-lasting pain, and sleepless nights. *Id.* at 16-17. As to Plaintiff's hand injuries, Plaintiff asserts he now suffers from Boutonnières deformity/flexion; Defendant Espino knows about this serious medical need as the injuries/deformities are so obvious that even a lay person would know he needs medical attention; Defendant Espino has provided no medical treatment and refused to approve the recommended physical therapy; and Defendant Espino's failure caused Plaintiff's injuries to worsen. Plaintiff considers his hand injuries to be the more serious medical need, and he has repeatedly asked for medical care but has received no treatment. *Id.* at 17. Plaintiff attaches to his Second Amended Complaint several medical records, sick-call requests, and administrative grievances. *See generally* Docs. 22-1 through 22-3. He requests declaratory relief and compensatory and punitive damages. *Id.* at 17-18.

## IV. Analysis

In his Motion, Defendant Espino requests that the Court dismiss this action and the claims against him. *See generally* Doc. 50. First, Defendant Espino argues that the Eighth Amendment applies to Plaintiff's deliberate indifference claim and thus his Fourteenth Amendment due process claim must be dismissed. *Id.* at 18. When a constitutional amendment "provides an explicit textual source of constitutional protection," that amendment guides the analysis, "not the more generalized notion of 'substantive due process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, the Eighth Amendment provides the explicit source for Plaintiff's allegations. Thus, the Fourteenth Amendment is inapplicable, and Defendant Espino's Motion is due to be granted on this issue.

Next, Defendant Espino argues Plaintiff's state-based "medical negligence" claims must be dismissed because Plaintiff failed to comply with the presuit requirements in Chapter 776 of the Florida Statutes. Doc. 50 at 18. In response, Plaintiff clarifies that he brings his claims under only 42 U.S.C. § 1983 and § 1983 does not require Plaintiff to comply with Chapter 776's presuit notice. Doc. 62 at 9. Considering Plaintiff's response, Defendant Espino's Motion is due to be denied as moot on this issue.

Finally, Defendant Espino argues this action should be dismissed because Plaintiff fails to state an Eighth Amendment claim upon which relief

7

can be granted; and Plaintiff is not entitled to punitive damages because he fails to plausibly allege conduct that is willful and malicious. Doc. 50 at 11-18.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). The Eleventh Circuit also requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." *Rehberger v. Henry Cnty., Ga.*, 577 F. App'x 937, 938 (11th Cir. 2014).[2] Absent a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

"To show that a prison official acted with deliberate indifference to serious medical needs [under the Eighth Amendment], a plaintiff must satisfy both an objective and a subjective inquiry." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing he had a serious medical need. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (citation and internal quotations marks omitted).

*Brown*, 387 F.3d at 1351. Next, "[t]o make out the subjective component of an Eighth Amendment deliberate-indifference claim, a plaintiff must establish that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis in original).

Here, Defendant Espino does not dispute that Plaintiff's hand injuries constitute a serious medical need.[3] *See generally* Doc. 50. Rather, he asserts he was not deliberately indifferent to Plaintiff's hand injuries by conduct that was more than negligence. *Id.* at 11-17. According to Defendant Espino, "the facts alleged by Plaintiff constitute nothing more than claims for medical malpractice and/or Plaintiff's disagreement with the treatment course pursued by several health care professionals over the course of 2020." *Id.* at 11. He asserts that the allegations in the Second Amended Complaint and the attachments thereto show several health care providers treated, saw, and assessed Plaintiff's hand injuries for months. *Id.* at 14. Defendant Espino contends Plaintiff underwent x-rays and even consulted an orthopedic surgeon. *Id.* According to Defendant Espino, while Plaintiff believes he should have received the recommended physical therapy, Defendant Espino, in his medical judgment, determined physical therapy was unnecessary based on his observations. *Id.* at 15. Instead, Defendant Espino argues Plaintiff merely disagrees with the course of treatment for his finger injuries, but this dispute in treatment does not rise to a constitutional violation. *Id.*

---

[3] Defendant Espino does not seek to dismiss Plaintiff's Eighth Amendment claim regarding his head injury, and thus, the Court does not address those allegations.

The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *see also Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (prisoner need not show that his or her medical needs were "literally ignored").[4] Deliberate indifference may occur where a prison official, knowing about a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment, *Edwards*, 478 F.3d at 831, acts in a manner contrary to the recommendation of specialists, *Arnett*, 658 F.3d at 753, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering, *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Here, Plaintiff alleges that after the use of force, Defendant Espino briefly examined him and documented a 0.25 cm abrasion on his left middle finger and a 0.5 cm abrasion on his left ring finger. *See* Doc. 22-1 at 2. Defendant Espino also ordered x-rays of Plaintiff's left hand. *Id.* at 4-5. But, according to Plaintiff, over the next seven months, Defendant Espino ignored Plaintiff's requests for medical assistance and refused to provide him any care for his hand injuries. Doc. 22 at 17. As a result of Defendant Espino's lack of treatment, Plaintiff alleges his hand injuries have significantly worsened.

---

[4] The Court does not rely on decisions of other circuits, published or unpublished, as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See United States v. Rosenthal*, 763 F.2d 1291, 1295 n.4 (11th Cir. 1985).

Indeed, while the April 2020 x-ray of Plaintiff's left hand appeared normal, the July 2020 x-ray revealed a left ring finger PIP joint flexion deformity and flexion of the right index and long finger PIP joints. Doc. 22-1 at 4-6. Plaintiff has been diagnosed with Boutonnières deformity/flexion, he has lost the ability to grasp objects, and his range of motion has decreased. Doc. 22-1 at 9-10. In October 2020, an orthopedic specialist recommended Plaintiff undergo physical therapy to regain the range of motion in his hands. *Id.* at 10. According to Plaintiff, however, Defendant Espino refused to follow the specialist's recommendation and continues to refuse any alternative treatment for these injuries despite Plaintiff's repeated requests for medical care. Doc. at 20 at 17

At this stage, taking Plaintiff's allegations as true, as the Court must, Plaintiff has sufficiently alleged Defendant Espino has disregarded Plaintiff's need for medical care by conduct that is more than negligence. Plaintiff also sufficiently alleges that he suffered more physical injuries because of Defendant Espino's alleged deliberate indifference. Likewise, given Plaintiff alleges Defendant was deliberately indifferent to his serious medical needs, a standard that is equated with "reckless disregard," *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023), his request for punitive damages is not due to be stricken, *see Barnett v. MacArthur*, 715 F. App'x 894, 905 (11th Cir. 2017) ("Punitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference

12

to federally protected rights.'"). Thus, Defendant Espino's Motion is due to be denied as to these issues.

### V. New Claim in Plaintiff's Response

Plaintiff argues in his response that he also brings a First Amendment retaliation claim against Defendant Espino. *See* Doc. 60 at 13. Defendant Espino does not address the purported First Amendment retaliation claim in his Motion. *See generally* Doc. 50. Even though Plaintiff does not explicitly reference the First Amendment in his Second Amended Complaint, he asserts Defendant Espino refused to provide medical care because he filed grievances. Doc. 22 at 14, 15. Liberally construing his *pro se* allegations, the Court finds Plaintiff's Second Amended Complaint gives Defendant Espino fair notice that Plaintiff is attempting to raise a First Amendment retaliation claim.

Accordingly, it is

**ORDERED:**

1. Defendant Espino's Motion to Dismiss (Doc. 50) is **GRANTED in part and DENIED in part.** The Motion is **GRANTED to the extent** that Plaintiff's Fourteenth Amendment claim is **DISMISSED with prejudice**. The Motion (Doc. 50) is otherwise **DENIED**.

2. Defendant Espino must file an answer to the Second Amended Complaint **by September 18, 2023**. After Defendant Espino files his answer, the Court will set further deadlines by separate order.

3. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendant are encouraged to maintain a realistic approach in making and/or considering any settlement offers.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of August, 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7

C:   Jonathan Michael Burton, #Y50899
     Counsel of record